UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN D. STILLER and JUDITH F.
STILLER,

        Plaintiffs,                            Case No. 1:11-cv-35

v.                                              HON. JANET T. NEFF

U.S. BANK, N.A.,

        Defendant.
_____/

**OPINION**

      Plaintiffs Jonathan and Judith Stiller filed suit in Michigan state court to challenge a foreclosure of their property, and Defendant U.S. Bank, N.A. removed the matter to this Court. Now pending before the Court is Defendant's Motion for Summary Judgment (Dkt 44) to resolve the remaining issue in this case, the sufficiency of the record chain of title in the Allegan County Register of Deeds. Plaintiffs filed a response to Defendant's motion (Dkt 45), and Defendant filed a reply (Dkt 46). Having fully considered the written briefs and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d). For the reasons that follow, the Court concludes that Defendant's motion is properly granted.

## I. BACKGROUND

**A.     Material Facts**

1.     1999–2002: *Loan Origination and Default*

On September 14, 1999, Plaintiffs executed a Note and Mortgage in favor of Associated Great Northern Mortgage Company (AGNMC) in the amount of $147,250.00 for their property at 1614 66th Street, in the City of Fennville, Michigan (the "66th Street Property") (SMF[1] ¶ 1). The Note had a thirty-year term at a fixed interest rate of 8.125 percent, and an initial monthly payment of $1,093.33 (*id.*).

Defendant asserts that, via a predecessor entity called "Firstar Bank, N.A.," it purchased the mortgage loan (SMF ¶ 2). Defendant asserts that on June 1, 2001, Great Northern Mortgage Company (GNMC) assigned the mortgage to Mortgage Electronic Registration Systems, Inc. (MERS), acting solely as the nominee for Defendant, its successors and assigns (*id.*). On August 13, 2010, MERS assigned the mortgage to Defendant (*id.*).

Defendant contends that Illinois public records reveal that AGNMC and GNMC are the same corporate entity (SMF ¶ 3). According to Defendant, the Illinois records indicate that the corporation most recently known as "Great Northern Financial Corporation" used the following names up until its involuntary dissolution in 2009:

   1.     4/6/1995–6/15/1995: GNM Acquisition Corp.

   2.     6/15/1995–10/22/1997: Great Northern Mortgage Company.

   3.     10/22/1997–10/20/1999: Associated Great Northern Mortgage Company.

---

[1] Defendant's Statement of Material Facts (Dkt 44 at 2-7); Plaintiffs' Counter-statement of Material Facts (Dkt 45 at 3-5).

   4.  10/20/1999–9/11/2009: Great Northern Financial Corporation.

(*id.*). Defendant points out that the Illinois Secretary of State classifies both AGNMC and GNMC with the same corporate file number: 58282863 (*id.*).

  Plaintiffs reject the assertion that Defendant purchased the loan from AGNMC, claiming that the purchase is not supported by documentary evidence (SMF ¶ 2). According to Plaintiffs, the assignment document contains no evidence that AGNMC and GNMC are one and the same entity (*id.*). Plaintiffs also contend that there is no evidence to support the claim that the assignor in the June 1, 2001 mortgage assignment describing itself as GNMC was in fact the Illinois corporation then known as Great Northern Financial Corporation (*id.*).

  It is undisputed that during 2002, Plaintiffs defaulted on their mortgage loan (SMF ¶ 4). During May 2003, Defendant commenced foreclosure by advertisement proceedings on the 66th Street Property (*id.*).

2.  2003–2010: *Chapter 13 Bankruptcy Case*

  On July 14, 2003, Plaintiffs filed a voluntary petition for Chapter 13 bankruptcy, *In re Stiller*, 323 B.R. 199, 201 (Bankr. W.D. Mich. 2005) (SMF ¶ 5). On October 29, 2003, the Chapter 13 plan was confirmed (*id.*). On October 31, 2003, Defendant filed a timely proof of claim stating that the amount of its secured claim was $149,853.23, including a pre-petition arrearage of $10,510.23 (*id.* ¶ 6). A dispute subsequently arose between Plaintiffs and Defendant as to the proper amount of the mortgage debt claimed in the Chapter 13 plan (*id.*). Defendant contends that although the Note clearly stated that the applicable interest rate was "8.125 %", Plaintiffs incorrectly indicated in their proposed plan that it was "6.00 %" (*id.*). Plaintiffs deny that they "incorrectly indicated" the rate in their proposed plan (*id.*).

The bankruptcy court ultimately held that because Defendant had failed to file a timely objection, Plaintiffs' plan would proceed as confirmed (*id.* ¶ 7). However, the bankruptcy court recognized that regardless of the amount stated in Plaintiffs' plan, they remained liable for the full amount of the secured debt:

> [T]he amount of U.S. Bank's claim against Debtors remains unaffected. While U.S. Bank's failure to object to Debtor's plan may delay recovery of the amount it is owed by Debtors under their contract, <u>the fact remains that Debtors still owe U.S. Bank the full amount due under their loan agreement with U.S. Bank</u>, that being the sum of 1) the principal balance, 2) the accrued but unpaid interest, and 3) other recoverable charges and expenses.

(*id.*). *Stiller*, 323 B.R. at 215 (emphasis added) (footnote omitted). Plaintiffs reject any implication from the bankruptcy court's order regarding the rate at which interest is accruing, opining that the bankruptcy court only referenced the accrued interest due (*id.*).

Starting in December 2003, the Trustee began making plan disbursements to Defendant (SMF ¶ 8). On December 23, 2008, Plaintiff Jonathan Stiller filed a pro se "Motion for Sanctions Against U.S. Bank Home Mortgage and Attorneys Tracy Frink, Kim M. Rattet, Marcy Ford, and Trott & Trott P.C. Their Law Firm" (*id.* ¶ 9). Plaintiff's claims against Defendant included: (1) improper attempts to collect pre-petition arrearages; (2) improper post-petition advances; (3) escrow repayments in violation of the Real Estate Settlement Procedures Act; (4) charging an 8.125 percent interest rate instead of the 6 percent interest rate in the confirmed plan; (5) improper demands on the Trustee for payment; and (6) fraudulent proof of claim (*id.*).

On February 3, 2009, the bankruptcy court redesignated Plaintiff's motion as an adversary proceeding (SMF ¶ 10). On February 9, 2009, the bankruptcy court dismissed the Trott & Trott defendants (*id.*). Plaintiff attempted to amend his complaint to add a number of additional claims,

but the bankruptcy court ultimately denied his request, noting that the proposed claims did not involve Defendant's conduct in connection with the administration of the confirmed plan (*id.*).

On January 15, 2010, Defendant moved for summary judgment on Plaintiff's adversary complaint (SMF ¶ 11). On February 18, 2010, the bankruptcy court denied Defendant's motion and declined to address all issues raised by Plaintiff, except for the single, narrow issue of whether a post-petition, post-confirmation paydown was inappropriate and limited Plaintiffs' potential recovery to $1,687.45 (*id.*).

On February 26, 2010, Plaintiff and Defendant entered into a settlement agreement on the sole claim at issue–"the advance balance" claim–and stipulated to dismiss the adversary proceeding (SMF ¶ 12). On March 2, 2010, the bankruptcy court dismissed the adversary proceeding (*id.*).

3.      *Foreclosure by Advertisement Proceedings*

On July 16, 2010, the Chapter 13 Trustee paid $13,581.10 to Defendant (SMF ¶ 13). Defendant accepted this amount to satisfy the arrearage on the mortgage loan through July 2009 (*id.*). Plaintiffs made no additional payments to Defendant (*id.*). In early August 2010, Defendant commenced foreclosure by advertisement proceedings on the 66th Street Property (*id.* ¶ 14). *See* MICH. COMP. LAWS § 600.3204 (permitting non-judicial foreclosure). The foreclosure sale was ultimately scheduled for December 16, 2010 (*id.*).

**B.     Procedural Posture**

On December 15, 2010, Plaintiffs filed a three-count Complaint in state court against Defendant. Plaintiffs presented the following three claims:

>   I.      Request for Declaratory Relief, to wit: determine that Defendant's attempt to foreclose on their mortgage was invalid because there is no record chain of title;

      II.      Request for Declaratory Relief Concerning Balance Due Under Mortgage Note and Mortgage; and
      III.     Request for Injunctive Relief.

Plaintiffs filed a Motion for an Ex Parte Temporary Restraining Order (TRO) and Preliminary Injunctive Order (Dkt 1-3). The state court entered a TRO on December 15, 2010, restraining Defendant from conducting the sale and directing Defendant to appear on February 11, 2011 and show cause why a Preliminary Injunction should not issue (Dkt 1-4).

On January 10, 2011, Defendant removed the case to this Court based on diversity jurisdiction (Dkt 1 at ¶ 5). On February 11, 2011, this Court extended the TRO entered by the state court and enjoined Defendant's sale of Plaintiffs' home in foreclosure by advertisement proceedings during the pendency of this action (TRO, Dkt 13). On April 29, 2011, Plaintiffs filed their Brief in Support of their Motion for a Preliminary Injunction, contending that the Allegan County Register of Deeds lacked a "record chain of title" because of the name difference between AGNMC and GNMC, and that Defendant did not possess the "original, signed" Note (Dkt 21). This Court permitted Defendant to file a supplemental brief in opposition to the issuance of a Preliminary Injunction (Dkt 24). Further, on May 31, 2011, Defendant filed a Supplemental Brief in Response (Dkt 26). At the Show Cause hearing on June 6, 2011, the Court, having the benefit of a more complete record (including the original, signed Note) and the oral and written arguments of counsel, determined that the balance of factors did not warrant the issuance of a Preliminary Injunction during the pendency of this case (Dkt 30).

At a pre-motion conference on August 30, 2011, the parties agreed to the dismissal without prejudice of Count II, and the Court issued a briefing schedule on Defendant's proposed dispositive motion on the remaining count in Plaintiffs' Complaint, Count I (Dkt 39). The parties engaged in

settlement negotiations with the magistrate judge in February 2012, negotiations that proved to be unsuccessful (Dkts 49 & 54), necessitating resolution of this pending motion.

## II. ANALYSIS

**A.     Motion Standard**

A motion for summary judgment is properly granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In considering a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Because this is a diversity action in a matter removed to a Michigan district court, the substantive law of Michigan applies. *Wonderland Shopping Ctr. Venture Ltd. P'ship v. CDC Mortg. Capital, Inc*., 274 F.3d 1085, 1092 (6th Cir. 2001). This Court must follow and apply Michigan law in accordance with the controlling decisions of the Supreme Court of Michigan. *Id.*

**B.     Discussion**

The parties agree that the sole remaining issue in this case is whether a record chain of title exists in the Allegan County Register of Deeds sufficient for Defendant to foreclose Plaintiffs' mortgage by advertisement under MICH. COMP. LAWS § 600.3204(1) (Df. Br., Dkt 44 at 6-7; Pls. Br., Dkt 45 at 10).

According to Defendant, the fact that AGNMC used its former corporate name to assign the mortgage to MERS on June 1, 2001 (or that the term "Associated" was inadvertently omitted from

the corporate name) does not operate to "break" the chain of title from MERS to Defendant for purposes of § 600.3204(3) (Dkt 44 at 15-16, citing *Winiemko v. GE Capital Mortgage Serv., Inc.*, No. 177827, 1997 WL 33354482, at *2 (Mich. Ct. App. Jan. 17, 1997) (unpublished) (finding no violation of a prior version of § 600.3204(3) where the defendant merely changed the corporate identity of the original mortgage holder).

Plaintiffs, however, argue that the chain of title from AGNMC to Defendant *is* broken in light of "three fundamental defects" in the assignment document, including that (1) the name of the original mortgagee (AGNMC) is substantially different from the name of the purported assignor (GNMC); as well as (2) GNMC, the purported assignor, is not identified in the document as a partnership, corporation, joint venture, or any other entity, and no address is given for GNMC; and (3) the assignment document contains no verification that the vice president of "Associated Mortgage, Inc., a Wisconsin Corporation" was in fact an agent of either GNMC or AGNMC authorized to sign the purported assignment (Dkt 45 at 18).

As a threshold matter, Defendant argues that because Plaintiffs inexplicably waited eight and one-half years to challenge the validity of the assignment, the equitable doctrine of laches bars Plaintiffs' claims in Count I for declaratory and injunctive relief to halt the foreclosure sale (Dkt 44 at 12). According to Defendant, the recording of the June 2001 assignment provided Plaintiffs with "constructive notice" of any claimed defect (*id.* at 13, citing *In re Estate of Crawford*, 320 N.W.2d 276, 279 (Mich. Ct. App. 1982)). Furthermore, Defendant contends that Plaintiffs had "actual notice" of their claim because they knew that the loan was transferred in 2001 (*id.*).

Although Plaintiffs acknowledge that they knew their mortgage loan was being serviced by someone other than the original mortgagee in 2001, they claim they had neither constructive nor

actual notice of the purported June 1, 2001 assignment and that they therefore did not unreasonably delay in challenging the validity of the record chain of title regarding their mortgage (Dkt 45 at 12-14). Plaintiffs also opine that Defendant has not supported its assertion that it has been prejudiced by Plaintiffs' alleged negligence or failure to timely assert its claims regarding the chain of title (*id.* at 14).

Defendant correctly sets forth the following principles of law governing the doctrine of laches (Dkt 44 at 13). "Laches is a negligent and unintentional failure to protect one's rights." *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991). "A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 320 (6th Cir. 2001). "An injunction is an equitable remedy, and as such, the equitable defense of laches is applicable." *Advocacy Org. for Patients & Providers v. Mercy Health Servs.*, 987 F. Supp. 967, 970 (E.D. Mich. 1993). Laches operates to bar equitable relief relating to the validity of recorded instruments where the plaintiff had notice, lacked diligence, and prejudiced the defendant. *See, e.g., Staebler v. Buchanan*, 205 N.W.2d 843, 846 (Mich. Ct. App. 1973) (holding that a seven-year delay in bringing an equitable action to reform a warranty deed into a mortgage constituted laches); *Crawford*, 320 N.W.2d at 279-80 (holding that a five-year delay in challenging a quitclaim deed constituted laches); *Leavell v. Wells Fargo Bank, N.A.*, No. 08-15278, 2009 WL 1329915, at *6-7 (E.D. Mich. May 19, 2009) (unpublished) (holding that a nine-year delay in challenging the validity of a recorded mortgage constituted laches). *Cf. Livonia Props. Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 399 F. App'x 97, 103 (6th Cir. 2010) (unpublished) ("Any claim by Livonia that Farmington or the Trust before it was not a valid

assignee of the mortgage rings hollow, as Livonia made mortgage payments directly to the Trust for years without questioning the Trust's right to receive payment.").

Plaintiffs do not dispute the foregoing principles of law, only their application to the facts at bar (Dkt 45 at 11). However, even considering the pleadings and other documentary evidence in a light most favorable to Plaintiffs, the Court agrees with Defendant that Plaintiffs exhibited a lack of diligence in waiting more than eight years to object to the validity of the 2001 assignment, despite having at least constructive notice, and that this lack of diligence prejudiced Defendant. Indeed, as Defendant points out, Plaintiffs waited to present their claim until the eve of the foreclosure sale, i.e., after Defendant incurred the additional expense of bringing the foreclosure by advertisement proceedings. Hence, the doctrine of laches bars Plaintiffs' requested relief in Count I.

Even if the doctrine of laches does not bar the relief Plaintiffs request in Count I, Defendant is entitled to judgment as a matter of law on this remaining count because Defendant has demonstrated the requisite record chain of title. Here, Defendant, not the original mortgagee (AGNMC), is the foreclosing party. Under Michigan law, "[i]f the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title shall exist prior to the date of sale under section 3216 evidencing the assignment of the mortgage to the party foreclosing the mortgage." MICH. COMP. LAWS § 600.3204(3). The determination whether a record chain of title exists is limited to "an examination of the public records." *Livonia Props.*, 399 F. App'x at 103 (applying Michigan law).

Other courts have previously rejected the argument that missing, defective, or flawed assignments operate to corrupt the record chain of title and thus preclude a bank from foreclosing under Michigan's foreclosure by advertisement statute. *See Residential Funding Co., L.L.C. v.*

*Saurman*, 805 N.W.2d 183, 184 (Mich. 2011) (quoting *Arnold v. DMR Fin.*, 532 N.W.2d 852, 856 (Mich. 1995), and observing that "'the validity of the foreclosure is not affected by any unrecorded assignment of interest held for security.'"); *Livonia Props.*, 399 F. App'x at 102 (rejecting arguments that a defective or flawed assignment corrupts the chain of title where "the public records show the mortgage passing from Lehman Brothers to the Trust to Farmington, and the plain language of the statute appears to require nothing more"); *Jarbo v. BAC Home Loan Serv.*, No. 10-12632, 2010 WL 5173825, at *6-8 (E.D. Mich. Dec. 15, 2010) (relying on *Livonia Props.* to reject the plaintiffs' argument that a Michigan mortgage may only be foreclosed by advertisement if every interim assignment between the original lender and the foreclosing party is revealed by the public record).

The Court therefore agrees with Defendant that there was no requirement for AGNMC to "assign" the mortgage to GNMC to complete the chain of title where AGNMC and GNMC were simply two different names for the same corporate entity, as evidenced by Illinois public records. For purposes of Michigan's foreclosure by advertisement law, "no assignment from [a] merging entity into [a] surviving entity is required for purposes of compliance with M.C.L. 600.3204(3)." *Meyer v. Citimortgage, Inc.*, No. 11-13432, 2012 WL 511995, at *2 (E.D. Mich. Feb.16, 2012) (citing *Winiemko*, 1997 WL 33354482, at *2).

Nor does the purported lack of identifying information for GNMC provide a basis for breaking the chain of title. Section 600.3204(3) does not specify any particular form for an assignment. Section 600.3204(3) requires only that the record chain of title "evidence" an assignment. Similarly, the purported lack of evidence of "signing authority" does not provide a basis for breaking the chain of title. *See Talton v. BAC Home Loans Servicing LP*, ___ F. Supp. 2d

11

\_\_\_, 2012 WL 855975, at \*6-9 (E.D. Mich. Mar. 7, 2012) (rejecting the argument that the assignment is invalid unless the defendant has proof that the signatory maintained a valid power of attorney to execute foreclosure documents).

In sum, the three "fundamental defects" Plaintiffs identify in the assignment document do not demonstrate a fact question on the validity of the assignment of their mortgage to Defendant. Therefore, even if the laches doctrine does not operate to bar the relief Plaintiffs seek, Plaintiffs have failed to create a genuine issue of material fact precluding summary judgment in Defendant's favor, and the Court will grant Defendants' motion on Count I of the Complaint.[2]

### III. CONCLUSION

For the foregoing reasons, Defendant is entitled to summary judgment of Count I, and this Court therefore grants the Motion for Summary Judgment (Dkt 44). An Order will be entered consistent with this Opinion. Moreover, because the Order resolves the last pending claim in this case, the Court will also enter a Judgment. *See* FED. R. CIV. P. 58.

DATED: May 3, 2012          /s/ Janet T. Neff
                            JANET T. NEFF
                            United States District Judge

---

[2]Because Defendant has complied with the statute, the Court does not reach Defendant's alternative argument that the statute requires only substantial compliance. Similarly, given the result in this case, it is unnecessary to reach Defendant's argument that Plaintiffs lack standing to challenge the validity of the interim assignments.